# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMANDA KAYE PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-0002-CVE-JFJ |
| | ) | |
| AUSTIN POLICE DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Amanda Kaye Phillips, who appears pro se, initiated this action on January 3, 2020, by filing a civil complaint (Dkt. # 2) and a motion for leave to proceed in forma pauperis (Dkt. # 3). Based on representations in Phillips' motion, the Court grants her request to proceed without prepayment of the filing fee. See 28 U.S.C. § 1915(a). Phillips nonetheless remains obligated to pay the $350 filing fee in full when she is able to do so. See Brown v. Eppler, 725 F.3d 1221, 1231 (10th Cir. 2013) (noting that authorization to proceed in forma pauperis only excuses prepayment of the filing fee). However, for the reasons further discussed below, the Court finds the complaint shall be dismissed.

### I.  Complaint and allegations

Phillips, who currently resides in Tulsa, Oklahoma, brings this action against 26 defendants, invoking this Court's diversity jurisdiction, under 28 U.S.C. § 1332. Dkt. # 1, at 1; Dkt. # 2, at 1-3. Sixteen defendants reside in, or have some connection to, Texas: (1) the Austin Police Department, (2) the Travis County Sheriff's Office, (3) the Travis County District Attorney Office, (4) Gustavo Garcia, Jr., a prosecutor with the Travis County District Attorney Office, (5) the Texas Board of

Nursing, (6) the Texas State Bar, (7) the City of Austin, Texas, (8) Katherine Thomas, President of the Texas Board of Nursing, (9) Travis County, Texas, (10) Austin police officer C. Pierce, (11) Christopher Born, CEO of Dell Children's Hospital, (12) the Seton Family of Hospitals, (13) the Austin Community College District, (14) Brittany Garrett, Dell Children's Hospital RN recruiter, (15) Deb Brown, former Chief Nurse Officer at Dell Children's Hospital, and (16) Ascension, a corporation based in St. Louis, Missouri, that owns the Seton Family of Hospitals, in Austin, Texas. Dkt. # 2, at 1-3, 7, 9. The Court will hereafter refer to these defendants as the "Texas defendants."

Ten defendants reside in, or have some connection to, Oklahoma: (1) the David L. Moss Criminal Justice Center (DLMCJC), a.k.a., the Tulsa County Jail,[1] (2) the Tulsa Emergency Medical Services Authority, (3) Male Paramedic, (4) Female Paramedic, (5) the Oklahoma Board of Nursing, (6) Carmen Nickel, MS, RN, President of the Oklahoma Board of Nursing, (7) the U.S. Marshals Service located in Tulsa, Oklahoma, (8) Male U.S. Marshal 1, (9) Male U.S. Marshal 2, and (10) Male U.S. Marshal 3. Dkt. # 2, at 1-2. The Court will hereafter refer to the first six defendants as the "Oklahoma defendants," and the last four defendants as the "federal defendants."

Phillips describes her complaint as one asserting claims for "retaliation, civil conspiracy, intentional infliction of emotional distress, abuse of process, abuse of discretion, fraudulent misrepresentation, extortion by color of official right, RICO racketeering, [and] negligence." Dkt. # 2, at 1. In her civil cover sheet, Phillips also refers to "Hobbs Act extortion under color of official right, RICO, fraud" and 18 U.S.C. § 241, a criminal statute prohibiting "conspiracy against rights." Dkt. # 1, at 1. In support of her request for $5 million damages, Phillips recites a litany of abuses

---

[1] Phillips mistakenly identifies the criminal justice center as "David Moss Correctional." Dkt. # 2, at 1.

allegedly perpetrated against her by defendants (and others) in Texas and Oklahoma between December 2016 and December 2019. Dkt. # 2, at 3-10. Her factual allegations are disjointed, but generally appear to relate to Phillips' employment, legal, housing and health issues.[2]

A.  **Employment issues**

Phillips claims several of the Texas defendants and some of the Oklahoma defendants have prevented, or are preventing, her from finding employment as a nurse, both in Austin, Texas and in Tulsa, Oklahoma. Dkt. # 2, at 3-4, 7-10.

According to Phillips, sometime before January 2017, the Seton Family of Hospitals, owned by Ascension, retaliated against her and failed to rehire her after she quit her job. Id. at 3, 7. Phillips filed a complaint against Seton with the Equal Employment Opportunity Commission (EEOC), in January 2017. Id. at 3, 7. The EEOC offered mediation, but Seton declined to participate. Id. at 3. Phillips filed a lawsuit against Seton in March 2017, but Seton's attorneys persuaded her to dismiss the lawsuit "in the hopes that the lawyers would negotiate a job at Dell Children's Hospital,"—a job that never materialized. Id. at 4. When Phillips filed complaints against Seton's attorneys (neither of whom are defendants in this case) in June 2018 and again in August 2019, the Texas State Bar "found no wrongdoing." Id. at 4, 7.[3] Phillips filed a second EEOC complaint against Seton in

---

[2] Phillips does not present her factual allegations in the most coherent manner. See Dkt. # 2, generally. Applying the rule of liberal construction afforded to pleadings filed by pro se litigants, see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), the Court has attempted to organize Phillips' claims by grouping together the factual allegations that seem most logically connected to one another.

[3] Phillips also alleges that Seton's attorneys violated "the Texas Bribery Statute" by hiring off-duty Austin police officers to guard the law firm's building. Dkt. # 2, at 8. But, again, Phillips does not name either attorney as a defendant. Further, it is unclear whether Phillips includes the "bribery" allegation in an attempt to state a claim against any of the Texas defendants.

3

December 2019, adding allegations of age discrimination, continued retaliation and fraudulent misrepresentation. Dkt. # 2, at 7.

Phillips filed complaints and reports with various federal and state agencies, against Seton and Ascension, alleging both defendants (1) commit "charity fraud," because Seton's CEO is overpaid while Seton's nurses are underpaid, (2) commit HIPAA violations because Seton employees' disclose patient information in emails, (3) abuse the immigrant visa system by hiring nurses from overseas, and (4) hire nurses from out of state when nurses living in Austin are available for hire. Dkt. # 2, at 4, 7-9.

Phillips also filed reports with federal and state agencies alleging that Seton, Ascension, the Austin Community College District, the Texas Board of Nursing, and the Oklahoma Board of Nursing commit "immigration abuse, charity fraud, general frauding of individuals like [Phillips], Hobbs Act Extortion by color of official right, RICO act racketeering, and defrauding federal programs." Dkt. # 2, at 8. Phillips specifically alleges both nursing boards "perpetuat[e] the widespread charity fraud" by "continu[ing] to allow new nursing schools to open; allow existing schools to increase their enrollments and graduations; [and] allow out of state and international applica[nts] to obtain licensure, thus drowning out job opportunities for nurses." Id. at 9. Phillips appears to allege that Travis County and the City of Austin are implicated in the charity fraud because they "have joint financial partnerships" with Ascension, Seton, and Dell Children's Hospital (which is owned by Seton), as well as other large hospitals in Austin. Id.

Though entirely unclear from the complaint, Phillips appears to assert some or all of her employment-related, fraud, and conspiracy claims against Christopher Born, the CEO of Dell

Children's Hospital; Deb Brown, Dell's former Chief Nurse Officer; and Brittany Garrett, Dell's RN Recruiter. Dkt. # 2, at 1-4, 7-10.

Finally, Phillips appears to fault the Texas Board of Nursing and its president, Carmen Nickel, for not renewing her nursing license, and the Oklahoma Board of Nursing and its president, Katherine Thomas, for not issuing her a nursing license, thereby making it difficult for her to find a job as a nurse. Id. at 9-10.

**B.  Legal issues**

Phillips claims that the federal defendants, some of the Texas defendants, and some of the Oklahoma defendants mistreated her (1) when she filed a police report in Austin, Texas, (2) when she was arrested in by federal authorities in Tulsa, Oklahoma on a criminal charge filed against her in Travis County, Texas, (3) when she was briefly incarcerated at the DLMCJC, (4) when she was transported to the Travis County Jail in Texas, and (5) when the Travis County prosecutor took certain actions regarding her Texas criminal case. Dkt. # 2, at 3-9. The specific allegations relating to each of these incidents require some unpacking.

**1.  Police report in Austin**

Phillips appears to assert an unspecified claim or claims against the City of Austin, the Austin Police Department, and Austin police officer C. Pierce based on their failure to follow up on a police report she filed in December 2016. Dkt. # 2, at 1-3. Phillips alleges that she called police and filed a report against a former neighbor who kicked in her car door and left a note on her windshield, that she later "declined to press charges," and that "no charges were ever filed." Id. at 3.

## 2. Arrest in Tulsa

Phillips appears to assert one or more claims against the federal defendants and some of the Oklahoma defendants arising from her August 2018 arrest in Tulsa. Dkt. # 2, at 4-5.

According to the complaint, at some point in time, the Travis County District Attorney Office and Gustavo Garcia, Jr., a prosecutor with that office, charged Phillips, in Travis County, Texas, with "[m]aking a terroristic threat and trying to influence the government." Id. at 1, 4, 6. Sometime thereafter, Phillips moved to Tulsa. Id. at 4. In August 2018, the U.S. Marshals Service in Tulsa arrested Phillips on the Travis County charge. Id. Phillips fainted and fell, hitting her head against the side of the U.S. Marshal's truck. Id. Two defendants, identified as Male U.S. Marshal 1 and Male U.S. Marshal 2, made fun of her for hitting her head but called an ambulance.[4] Id. at 5.

After the ambulance arrived, Male Paramedic made fun of Phillips when she told him about her medical and dental history; he also told her she did not need to go to the hospital. Dkt. # 2, at 4-5. Female Paramedic found that Phillips had tachycardia but failed to treat that condition before releasing Phillips from care so that she could be transported to jail.[5] Id. at 5. After the paramedics released her, Phillips was taken to the DLMCJC and "placed on a federal hold for one week." Id.

Phillips filed a complaint with the "Oklahoma State Department of Health Emergency Systems" against the Tulsa Emergency Medical Services Authority and Male Paramedic. Dkt. # 2, at 8. She alleges that she has not received "any notice" regarding the status of her complaint. Id.

---

[4]  Phillips also named Male U.S. Marshal 3 as a defendant, but the complaint does not allege that he engaged in similar conduct. Dkt. # 2, at 1, 5.

[5]  Phillips also identifies the Tulsa Emergency Medical Services Authority as a defendant, presumably based on the alleged misconduct of the two paramedics. Dkt. # 2, at 1.

She further alleges that the Department of Health contacted her by phone to ask questions, but she declined to answer them on advice from her former attorney. Dkt. # 2, at 8.

### 3. Conditions at the DLMCJC

Phillips appears to assert one or more unspecified claims against the DLMCJC relating to the conditions of her brief confinement at the DLMCJC in August 2018. Dkt. # 2, at 1, 5-6.

Phillips alleges she told the jail intake coordinator about the head injury she sustained when she was arrested and her pre-existing health conditions. Id. at 6. She also told the coordinator that she was depressed, anxious and fearful. Id. The coordinator told Phillips she would receive a psychiatric visit, but that visit "never happened." Id.

During her one-week confinement, Phillips noticed that the intake area and bathrooms at the DLMCJC were "filthy," the sink did not work, inmates had no soap or sanitizer, inmates were fed "slop" (i.e., hot dogs and bologna sandwiches), and inmates had no toilet paper for one or two days. Dkt. # 2, at 6. Phillips alleges she may have fallen one day in the medication line, but she is unsure if she hit her head. Id. In any event, she was taken to the medical unit, where she received substandard care, before being "escorted back to the pod, where the inadequate diet resumed." Id. Phillips also alleges she developed a large blister on her "right big toe from the plastic jail sandals at Tulsa County." Id. at 5, 6.

After one week, Phillips was released to the Texas Prison Transport systems, which she describes as "a now defunct private business hired by the Travis County Sheriff's Office," so that she could be transported to the Travis County Jail in Austin. Dkt. # 2, at 6.

On December 16, 2019, Phillips "requested monetary relief from the Travis County Commissioners Court . . . for the emotional and physical harm [she] endured during [her]

7

incarceration at [the] Tulsa County Jail since [Travis County] chose to wait a week to collect [her]." Dkt. # 2, at 9.

### 4. Transport to the Travis County Jail

Phillips appears to assert unspecified claims against the Travis County Sheriff's Office or Travis County, or both, relating to the conditions she experienced in August 2018 when she was transported to the Travis County Jail. Dkt. # 2, at 1-2, 5-7.

Specifically, Phillips alleges she was in wrist and ankle shackles for the 24-hour trip, forced to ride with other prisoners, and left alone in the van with a male prisoner who tried to "coerce" her to talk to him during a stop at "Huntsville prison." Dkt. # 2, at 6. She further alleges that the guards gave her "fast food," one guard removed "a large rifle from underneath the seat, and held it up into the air," and the guards placed her in danger by texting while driving, speeding in the rain, and driving without sufficient sleep. Id. According to Phillips, the shackles left her with cuts on her wrists and ankles. Id. When she arrived at the Travis County Jail, Phillips was placed in a holding cell for 22 hours and was given food, but her requests for a toothbrush and toothpaste were denied. Id. at 7.

Phillips filed a complaint with the internal affairs division of the Travis County Sheriff's Office regarding the 24-hour transport, but has not received a response. Id. at 8. In addition, she recently requested monetary relief from the Travis County Commissioners Court "for the emotional and physical harm [she] endured during . . . the 24 hour prison transport." Id. at 9.

5.  **Criminal prosecution in Travis County**

Finally, Phillips appears to assert unspecified claims against the Travis County District Attorney Office and one of its prosecutors, Gustavo Garcia, Jr., relating to the prosecution of her terroristic-threat charge. Dkt. # 2, at 8.

In May 2019, Phillips received a copy of an email Garcia sent to her defense attorney. Id. In the email, Garcia reluctantly agreed to place her case on the mental health docket, eight months after she submitted the application for the mental health docket. Id. This delayed her criminal case. Id. Phillips alleges Garcia's reluctance stemmed either from the fact that she did not live in Travis County or from the fact that Garcia has political connections in Travis County. Id. The criminal charge was ultimately dismissed in December 2019. Id. at 6.

C.  **Housing and health issues**

Phillips' remaining allegations appear to relate to issues with housing and health but do not appear to relate to any actions or omissions on the part of the named defendants. Dkt. # 2, at 4-6.

Phillips alleges she was evicted from her apartment in Georgetown, Texas, in March 2018, she lost her furniture and several personal belongings as a result of the move, and she "lost money in application fees" when she tried to find an apartment in Austin. Id. at 4. At some point, Phillips "was ordered by a Justice of the Peace in Travis County to pay over $2,000 in [a]ttorney fees for Roscoe Properties keeping a $300.00 deposit after denying [her] rental application." Id. According to Phillips, the Travis County judgment created "a collectable lien should [she] ever purchase property in Travis County." Id.

Phillips also alleges that sometime after she bonded out of the Travis County Jail, she returned to Tulsa and obtained inpatient and outpatient mental health treatment. Dkt. # 2, at 5.

Phillips alleges she has several medical conditions and asserts that she cannot obtain treatment for those conditions due to her lack of health insurance. Dkt. # 2, at 5-6. Phillips applied for social security disability in April 2019, but was denied benefits in May 2019. Id. at 6.

### D. Damages

As previously stated, Phillips requests $5 million in compensatory damages, citing her "past losses of employment, loss of future employment in Austin, Texas," "emotional distress and medical conditions," "costs of litigation," and her "inability to purchase a home, save for retirement, and have a meaningful life in" Austin. Dkt. # 2, at 10. Phillips also asks the Court to "apply any punitive damages and/or sanctions as [it] deems appropriate." Id.

## II. Analysis

Because the Court found that Phillips was indigent and granted her request to proceed in forma pauperis, the Court must consider whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Section 1915(e)(2)(B) provides that when a litigant proceeds in forma pauperis, "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious; [or] fails to state a claim on which relief may be granted." In addition, because federal courts are courts of limited jurisdiction, this Court has an independent duty to determine whether Phillips has alleged sufficient facts to establish subject-matter jurisdiction. Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240, 1244-45 (10th Cir. 2001). And, while personal jurisdiction and venue are affirmative defenses to be raised or waived by defendants, this Court nonetheless has discretion to dismiss a complaint for lack of personal jurisdiction or improper venue when either "defense is obvious from the face

of the complaint and no further factual record is required to be developed." Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting Fratus v. Deland, 49 F.3d 673, 674-75 (10th Cir. 1995)). In determining whether dismissal is appropriate, for any of these reasons, the Court must liberally construe Phillips' pro se complaint and must accept as true her well-pleaded factual allegations. Kay v. Bemis, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

    A.    **Subject-matter jurisdiction**

As a preliminary matter, Phillips identifies only one basis for this Court's subject-matter jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332. Dkt. # 1, at 1; Dkt. # 2, at 3. To establish diversity jurisdiction, "the complaint must allege that the plaintiff and defendant are citizens of different states and that the amount in controversy is greater than $75,000." Rice, 260 F.3d at 1245; 28 U.S.C. § 1332(a). Phillips' request for $5 million in damages is more than sufficient to satisfy the latter requirement. But it is obvious from the face of the complaint that she cannot satisfy the former requirement because she is a citizen of Oklahoma and has identified 10 of the 26 defendants as residents of Oklahoma. See Salt Lake Tribune Pub. Co., LLC v. AT & T Corp., 320 F.3d 1081, 1095-96 (10th Cir. 2003) ("It has long been the rule that to satisfy the diversity of citizenship requirement of 28 U.S.C. § 1332(a)(1) the plaintiffs and defendants must be completely diverse: No plaintiff can be a citizen of the same state as any defendant." (citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978))). Thus, the Court clearly does not have subject-matter jurisdiction under § 1332.

However, to the extent Phillips' complaint could be construed as an attempt to assert claims for relief based on alleged violations of her civil rights, either under 42 U.S.C. § 1983, as to the Texas defendants and the Oklahoma defendants, or under Bivens v. Six Unknown Named Agents

of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), as to the federal defendants, the Court has subject-matter jurisdiction over those claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (deprivation of civil rights by state actors) and could exercise supplemental jurisdiction over any related state-law claims under 28 U.S.C. § 1367.

Nevertheless, the Court finds Phillips' claims must be dismissed because venue is improper as to her claims against the Texas defendants and her claims against the remaining defendants are either frivolous or fail to state a claim upon which relief may be granted.

**B.      Venue**

Phillips' claims against the Texas defendants appear to include claims against state actors and private individuals for alleged violations of federal and state law. Dkt. # 2, generally. To the extent Phillips asserts claims against any of the Texas defendants under 42 U.S.C. § 1983, the applicable venue statute provides that "[a] civil action may be brought in

(1)    a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); see also Coleman v. Crisp, 444 F. Supp. 31, 33 (W.D. Okla. 1977) (noting that general venue provisions of § 1391 apply in § 1983 actions). Subsection one does not apply because all defendants are not residents of Oklahoma. Subsection two does not apply because a substantial part of the events or omissions giving rise to her claims against the Texas defendants occurred in Texas. And subsection three does not apply because nothing in the complaint suggests either (1) that

there is no judicial district in Texas where Phillips could pursue her claims or (2) that it would be appropriate for this Court to exercise personal jurisdiction over the Texas defendants.[6] Thus, the Court finds that venue is improper as to any § 1983 claims asserted against those defendants. Further, because venue is improper as to any federal claims Phillips asserts against the Texas defendants, the Court has no reason to exercise supplemental jurisdiction, under 28 U.S.C. § 1367, over her related state-law claims against those defendants. See Brooks v. Gaenzle, 614 F.3d 1213, 1229-30 (10th Cir. 2010) ("[W]e have ruled pendent jurisdiction over state claims 'is exercised on a discretionary basis' and generally held that '[i]f federal claims are dismissed before trial, leaving only issues of state law, "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."'" (quoting Bauchman v. West High Sch., 132 F.3d 542, 549 (10th Cir. 1997))). For these reasons, the Court finds the complaint should be dismissed, without prejudice, as to all claims asserted against the Texas defendants.

---

[6] "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). A federal court's exercise of personal jurisdiction over a nonresident defendant comports with due process "so long as there exist minimum contacts between the defendant and the forum state." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). Phillips' allegations against all but one of the Texas defendants relate solely to actions those defendants have allegedly taken against her regarding her employment and licensing as a nurse in Texas, her attempts to find housing in Texas, and her dealings with the criminal justice system in Texas. Only one of the Texas defendants, the Travis County Sheriff's Office, had any arguable contact with Oklahoma, and its forum-related activity consisted of sending a van to Tulsa to transport Phillips to the Travis County Jail following her arrest by federal authorities on an outstanding Texas warrant. Under these circumstances, the Court finds exercising personal jurisdiction over the Texas defendants would be questionable at best.

### C. Deficient pleading

As to Phillips claims against the federal defendants and the Oklahoma defendants, the Court finds the complaint must be dismissed for three reasons: Phillips failed to comply with basic pleading requirements, she asserts frivolous claims, and she fails to state any claims upon which relief may be granted.[7]

#### 1. Notice pleading

First, Phillips' complaint does not comply with basic pleading requirements set forth in the Federal Rules of Civil Procedure. Her factual allegations are rambling and disjointed, and generally provide no connection between the claims asserted and the facts alleged in support of those claims. Dkt. # 2, generally. See FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); FED. R. CIV. P. 8(d)(1) (providing that "[e]ach allegation must be simple, concise, and direct"); FED. R. CIV. P. 10(b) (requiring a party to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances").

Likewise, Phillips fails to clearly identify which claims she is attempting to assert against each particular defendant. Dkt. # 2, generally. The complaint therefore does not provide "fair notice" to any of the defendants regarding the claim or claims asserted against them. Robbins v. Oklahoma, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (noting it is particularly important to clearly identify the particular claims asserted against particular defendants when a plaintiff seeks to impose liability against multiple defendants by bringing an action under § 1983); see also Nasious v. Two

---

[7] Even assuming Phillips' could show that venue is proper as any of her claims against the Texas defendants, these same three defects further support dismissal of those claims.

Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007) (stating that "a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; *and, what specific legal right the plaintiff believes the defendant violated*." (emphasis added)).

Significantly, Phillips' status as a pro se plaintiff does not excuse her failure to comply with the Federal Rules of Civil Procedure. Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994). And the rule of liberal construction neither requires nor permits this Court to assume a role as her advocate by "stitch[ing] together cognizable claims for relief from . . . [a] wholly deficient pleading." Mann v. Boatright, 477 F.3d 1140, 1148 (10th Cir. 2007). Because the complaint fails to conform to basic pleading requirements, the entire complaint must be dismissed.

### 2. Frivolity

Second, even with the benefit of generous construction, most (if not all) of Phillips' claims against the federal defendants and the Oklahoma defendants are frivolous. For example, Phillips purports to sue the federal defendants, Male Paramedic, and the Tulsa Emergency Medical Services Authority for making fun of her, and she purports to sue the Oklahoma Board of Nursing and its president for engaging in an alleged conspiracy to prevent her from finding a job as a nurse, for perpetrating an alleged "charity fraud" by opening or operating nursing schools, and for failing to issue her a nursing license. Because these claims rest on factual allegations and legal conclusions that lack "an arguable basis either in law or in fact," they are frivolous and must be dismissed. Neitzke v. Williams, 490 U.S. 319, 325 (1989); 28 U.S.C. § 1915(e)(2)(B)(i).

### 3. Failure to state a claim

Third, and finally, to the extent any of Phillips' claims could be liberally construed as nonfrivolous, the Court finds no claims in the complaint that satisfy the plausibility standard. To state a plausible claim, either under § 1983 or Bivens, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" or has violated the plaintiff's rights as protected under federal law. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also Schaffer v. Salt Lake City Corp., 814 F.3d 1151, 1155 (10th Cir. 2016) (discussing elements of § 1983 claim); Smith v. United States, 561 F.3d 1090, 11103-05 (10th Cir. 2009) (discussing Bivens claim).

Here, accepting Phillips' allegations against the federal defendants as true, she alleges only that the federal defendants arrested her on an outstanding Texas warrant, placed her at the DLMCJC on a federal hold for one week, and laughed at her when she hit her head. Despite laughing at her, the federal defendants called an ambulance in response to her fall and potential injury. These facts fail to describe any acts or omissions of the federal defendants that violated Phillips' rights under the Constitution or any other federal law. Thus, the complaint fails any plausible Bivens claims against the federal defendants.

Similarly, the complaint fails to state any plausible § 1983 claims against the Oklahoma defendants. For example, Phillips appears to assert a claim against the DLMCJC based on her week-long exposure to allegedly unconstitutional conditions of confinement. This claim is not plausible for two reasons. First, the DLMCJC, as a county jail, has no legal identity separate and apart from Tulsa County and, thus is not a suable entity. See Hinton v. Dennis, 362 F. App'x 904, 907 (10th

Cir. 2010) (unpublished)[8] (holding that "the Creek County Criminal Justice Center is not a suable entity under § 1983"). Second, even assuming Phillips intends to assert her conditions-of-confinement claim against Tulsa County or an appropriate Tulsa County official, her factual allegations suggest, at most, that she was deprived of comfortable surroundings and desirable dinner choices for one week, not that she was deprived of her constitutional right to have "adequate food, clothing, shelter, [or] medical care" during a period of incarceration. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)); see also Wilson v. Seiter, 501 U.S. 294, 298 (1991) (noting that the Constitution "'does not mandate comfortable prisons, and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981))).

Phillips also appears to assert that Male Paramedic, Female Paramedic and the Tulsa Emergency Medical Services Authority either committed medical negligence or violated her constitutional right to adequate medical care. Even assuming (1) that these defendants were acting under color of state law, and (2) that Phillips' status at the time of her arrest by federal authorities implicated her constitutional right to adequate medical care, the facts alleged do not state a plausible § 1983 claim. Phillips alleges Female Paramedic found Phillips had a rapid heartbeat and determined it did not require medical treatment and that Male Paramedic assessed Phillips head injury and determined it did not require a trip to the hospital. These facts do not support a claim for medical negligence, much less a claim for deliberate indifference to a serious medical need. See

---

[8]  The Court cites this unpublished opinion for its persuasive value. See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

17

Farmer, 511 U.S. at 837 (explaining deliberate-indifference standard requires a showing that the defendant knew of and recklessly disregarded a substantial risk to the inmate's health); Estelle v. Gamble, 429 U.S. 97, 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Thus, the complaint fails to state any plausible claims against Male Paramedic, Female Paramedic, or the Tulsa Emergency Medical Services Authority, either under § 1983 or state law.

Because the complaint fails to state any plausible Bivens claims against the federal defendants and fails to state any plausible § 1983 claims against the Oklahoma defendants, the Court sees no reason to exercise supplemental jurisdiction over Phillips' related state-law claims against those defendants. 28 U.S.C. § 1367; Brooks, 614 F.3d at 1229-30. For these reasons, the Court finds the complaint should be dismissed without prejudice as to all claims asserted against the federal defendants and the Oklahoma defendants.

### D. Leave to amend

Ordinarily, a court should provide a pro se plaintiff a reasonable "opportunity to remedy defects potentially attributable" to the plaintiff's ignorance of, or unfamiliarity with, federal law. Reynoldson v. Shillinger, 907 F.2d 124, 126 (10th Cir. 1990). Thus, if it is possible that the plaintiff could "correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." Id. However, a court may dismiss a complaint without leave to amend if the court finds that amendment would be futile. Hall, 935 F.2d at 1110. Here, given the nature and number of the defects in Phillips' complaint, the Court finds amendment would be futile and that it is therefore appropriate to dismiss the complaint without leave to amend.

### III. Conclusion

Based on the foregoing analysis, the Court concludes that the complaint shall be dismissed, without prejudice, as to all claims asserted against the Texas defendants because those claims are asserted in an improper venue. The Court further concludes that the complaint shall be dismissed, without prejudice, as to all claims asserted against the Oklahoma defendants and the federal defendants, because those claims are either frivolous or fail to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The motion for leave to proceed in forma pauperis (Dkt. # 3) is **granted**.

2. Phillips is obligated to pay the **$350** filing fee when she is able to do so.

3. The complaint (Dkt. # 2) is **dismissed without prejudice**.

4. This is a final order terminating this action.

5. A separate judgment of dismissal shall be entered in this matter.

**DATED** this 10th day of January, 2020.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE